Filed 1/10/14  In re S.S. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHELLE S. et al.,<br><br>    Defendants and Appellants. | G048444<br><br>(Super. Ct. Nos. DP021546, DP021547, DP021548, DP021549 & DP021550)<br><br>O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, Gary G. Bischoff, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant Michelle S.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant Ismael S.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

*　　　*　　　*

Michelle S. (mother) and Ismael S. (father) appeal from the juvenile court's termination of their parental rights to five children. Mother contends the court erred in denying her petitions to change the order terminating reunification services and setting a permanency planning hearing under Welfare and Institutions Code section 366.26 (all further statutory references are to this code) without a hearing. (§ 388, subd. (a).) Father does not raise any independent grounds, but merely argues if mother's appeal is found to have merit, we must also reverse as to him. Finding no error, we affirm the judgment as to each parent.

FACTS AND PROCEDURAL BACKGROUND

In August 2011, appellants' five children, ranging in age from 4 years to 3 months, were detained by the Orange County Social Services Agency (SSA) based on the parents' domestic violence and unresolved substance abuse. According to SSA's petition, the parents fought in front of the children. Mother entered a domestic violence shelter, but was forced to leave because she remained in contact with father. In addition, SSA alleged mother used methamphetamines while having sole care and custody of the children and even when breast feeding two of them. On one occasion, mother left the children alone to smoke a cigarette. As to father, the petition alleged he has unresolved problems with both drugs and alcohol, thereby impairing his ability to protect the children. Mother obtained a three-year restraining order against father.

2

At a combined jurisdictional and dispositional hearing, father submitted on the amended petition's allegations and mother entered a plea of no contest to them. The court sustained the amended petition, declared the children dependents, awarded custody of the children to SSA, and approved its family reunification and visitation plans. The oldest and youngest siblings were placed in one foster home while the other three siblings were placed in another foster home.

The parents' case plans included requirements that they complete a parenting class, complete a drug treatment program with random testing, and participate in individual therapy. Mother's plan also called for her to complete an approved personal empowerment counseling program focused on domestic abuse. Each parent was authorized weekly supervised visits with the children.

At the time of the six-month review hearing, SSA recommended terminating reunification services for both parents. Mother's progress on her case plan was described as minimal, while father had failed to make any progress on his plan. Mother completed a personal empowerment program but, claiming she did not need the services, initially refused to attend a parenting class or participate in individual counseling. When mother eventually participated in parenting sessions, the supervisor reported she did not show "any improvement or insight as to her parenting deficits." She enrolled in a substance abuse program, but the program's manager described her as "immature," uncommitted, and "not taking the program seriously." Mother also failed to regularly attend Alcohol Anonymous or Narcotics Anonymous meetings and, while she had no positive drug results, she did miss several test appointments.

Mother regularly visited with the children. She was affectionate with them, but the social worker described the "quality" of the visits as "limited." Mother appeared to lack "parenting skills or knowledge of children's development," "rarely demonstrated her parental role," and when she did attempt to do so "was not consistent and not able [to] follow thr[ough] in her efforts." Although her interaction with the children began to

3

improve shortly before the six-month review hearing in June 2012, mother tended to sit and merely watch the children play during visits.  Mother would bring only a few diapers with her and sometimes failed to bring any at all.  Even when diapers were available, she failed to use them when necessary.  Monitors also reported mother frequently tended to "'space[] out' and/or disassociate[]" for 5 to 20 minutes and, on at least one occasion, over an hour.  She repeatedly rebuffed the monitors' efforts to correct her behavior.

According to the social worker, mother reported finding only seasonal employment, and because of financial problems, had to move several times.  She denied having any contact with father.

At the six-month review hearing, the parties stipulated to continue providing both parents with reunification services.

The twelve-month review hearing was initially set for September, but the hearing was continued several times until January 2013; one month short of 18 months from the date the children were detained.

SSA again recommended terminating reunification services and setting a permanency planning hearing.  Mother admitted to the social worker that, despite the restraining order, she had been receiving financial support from father and in July 2012 began living with him again.  At the twelve-month review hearing, she testified "I had . . . nowhere else to go," but admitted making no effort to find a shelter or seek assistance from her social worker.  She also acknowledged father was still providing her with financial support.

Mother submitted to a psychological evaluation.  It resulted in findings that she suffered from depression with personality traits of obsessive-compulsive activity, narcissism, histrionics, and paranoia.  In September she met with a psychiatrist for counseling but thereafter missed all of her follow-up visits.  Although prescribed medication for her depression, mother reduced the dosage and then stopped taking it altogether without contacting her psychiatrist.

4

She also continued to insist she did not need a program to improve her parenting skills. But in late August 2012, mother agreed to participate in another parenting program that would take place during her visits with the children. There was some improvement in her parenting, but she needed further improvement. A monitor testified mother was inconsistent in disciplining the minors when they acted inappropriately. On a few occasions the monitor had to intervene when mother failed to stop risky behavior. During a November visit, the monitor reported mother watched as one child removed three small batteries from a toy and placed them in her mouth. In a December visit, the monitor again had to intervene when mother attempted to place a board over some chairs to build a house.

In late 2012, mother was admitted to the emergency shelter program of Colette's Children's Home (home), a shelter for women and children. The home's case manager testified mother was required to meet with her and attend life skills classes every week, participate in a savings program, observe a curfew, and submit to random drug testing. If she complied with the rules, mother would move into its transitional shelter program. Other than missing curfew twice because of her job, mother had complied with the home's rules. At the time of the hearing, she had saved $540. Mother shared a room with five other women. Because she was seeking to reunify with her children, the case manager testified the home's plan was to move mother into a room containing beds for all of the children if needed.

Mother participated in and completed a substance abuse program. She did not have any positive test results, but again missed several test appointments. While mother testified she attended Alcoholics Anonymous meetings, she acknowledged missing meetings, failing to obtain a sponsor, or even starting the 12-step program.

While mother began individual counseling concerning her parenting, substance abuse, and domestic violence, the therapist reported that between October and mid-December 2012 she failed to attend any sessions. At the twelve-month review

5

hearing, the therapist testified mother made some progress in dealing with these issues. On parenting the therapist acknowledged "the challenge has been . . . [mother] does not view herself as a parent who needs help with skills" and still lacked insight. As for domestic abuse, mother recognized her relationship with father was an abusive one, but continued to deny he physically abused her. The therapist stated mother needed additional counseling "to address parenting issues and . . . the domestic violence issues to demonstrate that she will be able to protect herself and . . . the kids."

The juvenile court terminated reunification services for both parents and scheduled a permanency planning hearing for May 14, 2013. The court ruled father had not regularly participated in the programs offered to him. As for mother, the court acknowledged she "participated in the programs" to some extent, but found "the real problem is that [she did not] . . . benefit[] from [them]." It cited mother's decision to turn to father for help rather than take advantage of other support sources, and found she was untruthful in denying that he was still abusive. The court was also concerned mother still had a problem with drug abuse. Citing her ease in getting to work and appearing for visits while feigning an inability to keep appointments for other aspects of her case plan, the court concluded mother was merely "going through the motions."

On the date set for the permanency planning hearing, mother filed two petitions under section 388, seeking the return of all five children to her custody or reinstatement of reunification services. Her declaration in support of each petition noted she had: (1) Moved into Colette's transitional housing program in February 2013, remained employed, and increased her savings to $1,584; (2) completed five programs "in the past 17 months," including three parenting classes and two personal empowerment programs, one of which she completed in April 2013; (3) completed six months of counseling and "since January 2013" had kept monthly appointments with the psychiatrist; and (4) continued to visit with the children twice a week.

6

Counsel for SSA and the minors both opposed the petitions.  The court denied the petitions without a hearing.  Noting mother "has not addressed the core issues" and had "reduced her visitation" with the children from three to two weekly sessions since the twelve-month review hearing, the court concluded that, at best, the petitions showed "changing circumstances."  At the completion of the permanency planning hearing, the court terminated the parental rights of both parents and ordered adoption as the permanent plan.

## DISCUSSION

Mother contends the juvenile court erred in summarily denying her section 388 petitions.  She argues her graduation to the home's transitional shelter program, plus completion of both the first phase of a substance abuse program and a 10-week personal empowerment program established "her circumstances . . . had decidedly changed."  She further argues she made a prima facie showing that the return of the children to her care was in their best interests.

The juvenile court did not abuse its discretion in summarily denying the petitions.  Section 388, subdivision (a)(1) declares "[a]ny parent . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . to change, modify, or set aside any order of court previously made  . . . ."  To trigger a hearing on a section 388 petition, a "parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)  "There are two parts to the prima facie showing:  The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children."  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; see also *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 ["It is not enough for a parent to

show *just* a genuine change of circumstances," but "[t]he parent must show that the undoing of the prior order would be in the best interests of the child[ren]"].)

"Such petitions are to be liberally construed in favor of granting a hearing to consider the parent's request." (*In re Marilyn H., supra,* 5 Cal.4th at p. 309.) "We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W., supra,* 87 Cal.App.4th at p. 250; see also *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

The petitions failed to make the required prima facie showing. The bulk of mother's supporting declarations refer to her accomplishments before the twelve-month review hearing and the expressions of her belief that she is prepared to recover custody of the children. But mother did not seek a writ challenging the juvenile court's ruling at the twelve-month review hearing and cannot implicitly question the correctness of that order now. (Cal. Rules of Court, rule 5.695(h)(18).)

As for the new circumstances mentioned above, they either are not a material change in circumstance or, at best, reflect only a nascent effort to do so. The documentation for mother's completion of a drug abuse program is dated April 3, 2012, nine and one-half months before the twelve-month review hearing. The home's case manager explained at the twelve-month review hearing that its emergency shelter was only a 30-day program. If a woman satisfied the home's requirements she would be transferred to the transitional shelter program. The case manager testified mother was then in compliance with it's rules. Thus, the fact mother moved into the transitional shelter program merely indicates she continued to remain in compliance.

Mother did complete another personal empowerment program. But "[t]he requirement of petitioning the court for a hearing pursuant to section 388 to show changed circumstances must be viewed in the context of the dependency proceedings as a whole." (*In re Marilyn H., supra,* 5 Cal.4th at p. 307.) "Once reunification services are terminated, the focus shifts from reunification to the child[ren]'s need for permanency

8

and stability . . . . [Citation.] For a parent 'to revive the reunification issue,' the parent must prove that circumstances have changed such that reunification is in the child[ren]'s best interest." (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.) Mother's continued compliance with some aspects of her case plan and completion of a new course on a reunification plan requirement she had previously accomplished cannot suffice to overcome this hurdle.

Nor did mother make a prima facie showing that the return of the children to her care or the reinstatement of reunification services would be in the children's best interests. "The fact that the parent 'makes relatively last-minute (albeit genuine) changes' does not automatically tip the scale in the parent's favor. [Citation.] Instead, 'a number of factors should be examined.' [Citation.] First, the juvenile court should consider 'the seriousness of the reason for the dependency . . . .' [Citation.] 'A second important factor . . . is the strength of the existing bond between the parent and child . . . .' [Citation.] Finally, as 'the essence of a section 388 motion is that there has been a change of circumstances,' the court should consider 'the nature of the change, the ease by which the change could be brought about, and the reason the change was not made before . . . .' [Citation.] 'While the bond to the caretaker cannot be dispositive . . ., our Supreme Court [has] made it very clear . . . that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion.'" (*In re D.R., supra,* 193 Cal.App.4th at p. 1512.)

SSA's report for the permanency planning hearing noted the children had been living in their prospective adoptive homes for 8 and 20 months respectively and had bonded with their foster parents. In addition, the report noted "[a]lthough, the children are placed in two separate placements, both sets of prospective adoptive parents have agreed to provide ongoing and frequent interaction among the siblings as part of developing the permanent plan for the children."

9

We agree with mother that "[t]he best interest standard . . . cannot be a mere 'simplistic comparison' between [her] household and that of the foster parents." But here there was more. Mother has failed to make a showing that she has overcome the problems of domestic abuse, one of the primary reasons leading to the removal of the children from her care. While she maintained regular, although reduced visitation, mother also failed to make any showing that she can now care for five children on her own, including the imposition of fair and consistent discipline when necessary.

Thus, we conclude the juvenile court properly exercised its discretion in summarily denying mother's last-minute section 388 petitions.

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

10